### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **TIMOTHY LYNCH**<br>715 Penguin Drive<br>Ocean City, MD 21842 | * |
| | * |
| *Plaintiff,* | * |
| | * |
| **v.** | * |
| | * |
| **THE MAYOR AND CITY COUNCIL**<br>**OF OCEAN CITY**<br>301 N. Baltimore Avenue<br>Ocean City, MD 21842<br>**Serve:** Heather Stansbury, Esq.<br>　　　Ayres, Jenkins, Gordy<br>　　　& Almand, P.A.<br>　　　6200 Coastal Highway<br>　　　Suite 200<br>　　　Ocean City, MD 21842 | * |
| **and** | * |
| **OFFICER DANA JACKSON**<br>(in his individual and<br>official capacities)<br>Westminster Police Department<br>36 Locust Street<br>Westminster, MD 21157 | * |
| **and** | * |
| **DETECTIVE KORY MOERSCHEL**<br>(in his individual and<br>official capacities)<br>Ocean City Police Department<br>6501 Coastal Highway<br>Ocean City, MD 21842 | * |
| *Defendants.* | * |

Case No.: _____

*        *        *        *        *        *        *        *        *        *        *        *        *

**COMPLAINT**

Plaintiff Timothy Lynch ("Mr. Lynch") through counsel makes this complaint against the Mayor and City Council of Ocean City ("the Town"), Officer Dana Jackson ("Officer Jackson"), and Detective Kory Moerschel ("Detective Moerschel") arising from Plaintiff's unlawful arrest and malicious prosecution by Defendants. Mr. Lynch contends he was falsely accused by Officer Jackson of pointing a firearm at him, leading to his wrongful arrest and subsequent charging by Detective Moerschel. Mr. Lynch seeks declaratory and injunctive relief, compensatory damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 in that this action asserts violations of rights secured by the laws of the United States; specifically, 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has supplemental jurisdiction over Mr. Lynch's claims arising under Maryland's common law, pursuant to 28 U.S.C. § 1367.

2.      The acts and omissions giving rise to Plaintiff's claims occurred in Maryland, and there is no other district in which this action may be brought. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b).

3.      All prerequisites to bringing this suit, including those imposed by Maryland Code Ann., Cts. & Jud. Proc. § 5-304, have been satisfied. Prior to bringing this action, Mr. Lynch timely served a Tort Claim Notice upon Terry McGean, City Manager of Ocean City.

2

**PARTIES**

4.     Mr. Lynch resided in Maryland during the events giving rise to this case and remains a Maryland resident.

5.     Officer Jackson was employed as a police officer in the Ocean City Police Department ("OCPD") during the events giving rise to this case. He is currently employed as a police officer in Westminster, Maryland.

6.     Detective Moerschel was employed as an OCPD detective during the events giving rise to this case.

7.     The Town is a municipal corporation of the State of Maryland located in Worcester County, Maryland, with all the privileges of a body corporate to sue and be sued and to plead and be impleaded in any court of law. The Town is authorized by law to maintain a police department.

**FACTS COMMON TO ALL COUNTS**

8.     Mr. Lynch is a retired Philadelphia police officer, who now works as a firearm safety instructor for the National Rifle Association ("NRA"), training numerous law enforcement personnel – including OCPD officers – in the safe usage of a variety of firearms. Pursuant to this employment, Mr. Lynch legally owns and carries firearms on his person on a regular basis.

9.     Prior to the events giving rise to this case, Mr. Lynch had no criminal record.

10.     On December 1, 2022, at approximately 4:45 p.m. Mr. Lynch was driving home after going out to lunch with his wife, when he stopped at a red light at the intersection of Golf Course Road and Maryland Route 50 in West

Ocean City. While he was stopped, Mr. Lynch removed his legally owned and carried firearm from his front appendix-style holster due to physical discomfort from wearing it all day. Mr. Lynch briefly inspected his firearm, then placed it on the front passenger seat of his vehicle.

11.     At no point did Mr. Lynch raise the gun above the level of the window or steering wheel.

12.     While Mr. Lynch was doing this, a vehicle stopped in the lane next to him on the passenger side and its driver started yelling at him. Mr. Lynch was alarmed and avoided eye contact, only noting the driver was wearing what appeared to be a dark-colored knit cap. Once the light turned green, the other vehicle sped off ahead of Mr. Lynch, and he never saw the vehicle again.

13.     Unbeknownst to Mr. Lynch, the other vehicle was driven by Officer Jackson, who was on his way to work in his personal vehicle.

14.     At some point after their brief encounter, Officer Jackson called 911 and falsely reported that Mr. Lynch had pointed his firearm at him while stopped at the traffic light.

15.     Officer Jackson further misrepresented during the 911 call that he was following Mr. Lynch's vehicle, only ending his pursuit once Mr. Lynch allegedly continued to drive north on Coastal Highway past the OCPD headquarters on 65th Street.

16.     Officer Jackson's claim that he was tailing Mr. Lynch is clearly false as he had actually sped off ahead of Mr. Lynch. Additionally, even if Officer Jackson had been tailing Mr. Lynch, Mr. Lynch had turned off Coastal

4

Highway to drive to his home on Penguin Drive, more than thirty blocks to the South.

17.     Officer Jackson's 911 call had been routed to the Maryland State Police ("MSP") who in turn alerted OCPD. Despite the purported gravity of the situation, Officer Jackson never attempted to contact OCPD directly and failed to respond to OCPD's attempts to reach him on his cell phone even though he worked for OCPD.

18.     Officer Jackson arrived at OCPD headquarters at 4:51 p.m., where he was interviewed by MSP. During this interview, Officer Jackson did not appear alarmed or distressed by his alleged encounter with Mr. Lynch, but nonetheless was confused by simple details in his alleged account with Mr. Lynch and gave inconsistent statements. The MSP troopers interviewing him noted how "weird" Officer Jackson's story sounded. Nevertheless, OCPD issued an all-points bulletin to OCPD officers.

19.     At approximately 5:15 p.m., Mr. Lynch left his home in his vehicle. At approximately 5:23 p.m., OCPD Officer H.E. Miller ("Officer Miller"), responding to the all-points bulletin, located Mr. Lynch's vehicle preparing to travel north on Coastal Highway from 33rd Street.

20.     That Mr. Lynch was located on 33rd Street is obviously inconsistent with Officer Jackson's claim that he had followed Mr. Lynch northbound until they reached 65th Street, more than thirty blocks to the north, especially given the small amount of time that had elapsed since Officer Jackson's 911 call.

21.    At 5:26 p.m., Officer Miller activated his emergency lights and pulled Mr. Lynch over on a dead-end street surrounded by residential apartments. Body worn camera footage indicates that Office Miller was supported by at least 10 other police vehicles with activated emergency lights, including two MSP vehicles and one Department of Natural Resources vehicle.

22.    After stopping Mr. Lynch's vehicle, Officer Miller drew and aimed his weapon at Mr. Lynch's vehicle and, over his PA system, ordered Mr. Lynch to roll down his windows, turn off his vehicle, drop his keys on the ground through the driver's side window, and exit his vehicle. Mr. Lynch complied with all of Officer Miller's orders.

23.    Officer Miller ordered Mr. Lynch to place his hands on his head and walk backwards towards Officer Miller. Mr. Lynch complied with all of Officer Miller's orders.

24.    Officer Miller then ordered Mr. Lynch to get down on his knees. Despite Mr. Lynch responding that he was unable to do so due to bad knees, Officer Miller repeatedly ordered Mr. Lynch to kneel. Mr. Lynch ultimately complied with Officer Miller's orders, with difficulty.

25.    After Mr. Lynch managed to kneel, Officer Miller pushed Mr. Lynch's head forward, then handcuffed him, before bringing him to a nearby police vehicle.

26.    Body worn camera footage of the arrest indicates that by the time Mr. Lynch was handcuffed, there were at least fifteen officers on the scene,

6

the majority of whom had drawn and pointed their weapons – including rifles – directly at Mr. Lynch.

27.    Body worn camera footage further shows that a plain clothes OCPD Captain was present and supervised Mr. Lynch's arrest.

28.    Mr. Lynch's arrest was witnessed by numerous Ocean City residents who watched from their balconies overlooking the scene.

29.    Despite repeatedly asking officers why he had been arrested at gunpoint, Mr. Lynch was only told, (after being handcuffed for more than ten minutes), he had been arrested for "pointing a gun at someone." Mr. Lynch was given no further information.

30.    Pursuant to his arrest, Mr. Lynch was restrained with two pairs of handcuffs. The handcuffs were misapplied such that the locks were facing towards each other. Mr. Lynch's arms had to be overextended for Officer Miller to access the locks and release the second pair of handcuffs, injuring Mr. Lynch's shoulder.

31.    The anomalies in Officer Jackson's "account" of events were readily apparent to other responding officers almost as soon as Mr. Lynch was arrested. While Officer Miller performed a cursory sweep of Mr. Lynch's vehicle, another police officer opined "Can you imagine if [Officer] Jackson had his gun and fucking shot back?... It doesn't make any sense."

32.    Mr. Lynch was then transported to OCPD headquarters where he was processed and placed in a holding cell. Mr. Lynch was not given any

additional information regarding the charges against him or what he had been accused of.

33.     After waiting in the holding cell for several hours, Mr. Lynch was interviewed by OCPD Detective Moerschel. During this interview, Mr. Lynch was told for the first time he was accused of pointing his handgun at Officer Jackson. Mr. Lynch denied these allegations, answered all of Detective Moerschel's questions and informed Detective Moerschel of his background as a police officer and NRA firearm instructor. Mr. Lynch was also able to point out numerous discrepancies in Officer Jackson's "account" of events.

34.     Despite this, on December 2, 2022, Detective Moerschel charged Mr. Lynch with first and second-degree assault and reckless endangerment, by filing a Statement of Charges against him in the District Court of Maryland for Worcester County.

35.     Mr. Lynch was forced to defend these charges and consequently incurred expenses by paying a bond and hiring an attorney.

36.     On December 5, 2022, Mr. Lynch received a phone call from Captain Shawn Jones ("Captain Jones") of the OCPD requesting a meeting. When Mr. Lynch met with him later that day, Captain Jones intimated that after looking into Mr. Lynch's background and upon further review of the events leading up to his arrest, he believed the charges against Mr. Lynch should be dropped.

37.     On December 8, 2022, all the charges against Mr. Lynch were dropped because they were, by all accounts, baseless.

38.     During his arrest, Mr. Lynch suffered injuries to his knees and shoulder which, despite medical treatment, continue to cause him chronic pain. Mr. Lynch's arrest caused him severe emotional distress, anxiety and humiliation, and damaged his reputation. While the charges were pending, Mr. Lynch's employment as a firearm safety instructor was jeopardized.

39.     There was no probable cause for Mr. Lynch's arrest and prosecution. Individuals within MSP and OCPD expressed misgivings regarding the veracity of Officer's Jackson's claims even prior to Mr. Lynch's arrest. Additionally, Mr. Lynch is a retired police officer and has no criminal record or history of violence.

40.     That responding officers at the scene of Mr. Lynch's arrest would point weapons – including rifles – at Mr. Lynch when he posed no immediate danger to anyone and peacefully complied with all directions given to him by Officer Miller, constituted excessive and unreasonable force.

41.     Officer Jackson's egregious misconduct, coupled with OCPD's overblown response despite obvious factual and logical inconsistencies with the information on which they were operating, manifestly reflected the practices and policies of OCPD. Every step in Mr. Lynch's mistreatment was sanctioned by OCPD command staff, who, indeed, were active participants.

42.     As a result of Defendants' illegal behavior, Mr. Lynch has suffered serious and permanent injuries, psychological damages, and irreparable harm to his reputation, character, and standing in the community.

**CAUSES OF ACTION**

## COUNT I
## 42 U.S.C. § 1983
## FOR VIOLATION OF RIGHTS UNDER THE 4TH AND 14TH AMENDMENTS
### (Officer Jackson in his Personal Capacity)

43.    The facts alleged above are incorporated herein by reference.

44.    Officer Jackson violated Mr. Lynch's clearly established Fourth Amendment right to be free from unreasonable seizure by falsely reporting Mr. Lynch had pointed a weapon at him, resulting in Mr. Lynch's arrest.

45.    Officer Jackson acted under the color of law intentionally to deprive Mr. Lynch of his rights. The conduct of Officer Jackson violated clearly established constitutional rights of which all reasonable, moderately knowledgeable police officers are aware.

46.    Officer Jackson acted with malice and a reckless and callous indifference to Mr. Lynch's rights.

**WHEREFORE**, Mr. Lynch respectfully requests this Honorable Court grant the following relief:

A.    Enter a judgment in favor of Mr. Lynch and against Officer Jackson in his individual capacity for compensatory damages;

B.    Enter a declaratory judgment holding that Officer Jackson in his individual capacity violated Mr. Lynch's rights under the laws of the United States;

C.    Assess reasonable attorney's fees and costs in suit in favor of Mr. Lynch and against Officer Jackson in his individual capacity; and

D.    Grant Mr. Lynch any such other and further relief as the nature of his cause may warrant.

**COUNT II**
**42 U.S.C. § 1983**
**FOR VIOLATION OF RIGHTS UNDER THE 4ᵀᴴ AND 14ᵀᴴ AMENDMENTS**
**(Officer Jackson and Detective Moerschel in their Official Capacities and the Town)**

47.     The facts alleged above are incorporated herein by reference.

48.     Defendants had an unconstitutional policy or custom of excessive force and that unconstitutional policy caused Officer Jackson and Detective Moerschel to violate Mr. Lynch's constitutional rights. Despite obvious factual and logical errors in Officer Jackson's account, Defendants nonetheless proceeded to arrest Mr. Lynch at gunpoint, then file charges against him.

49.     The existence of Defendants' unconstitutional policy is confirmed by the presence of an OCPD captain at Mr. Lynch's arrest, who did not object to any of the conduct carried out against Mr. Lynch.

50.     The Town was aware of the unconstitutional actions by the other Defendants but did not attempt to correct their actions.

**WHEREFORE**, Mr. Lynch respectfully requests this Honorable Court grant the following relief:

A.     Enter a judgment in favor of Mr. Lynch and against the Town and Officer Jackson in his official capacity, jointly and severally for compensatory damages;

B.      Enter a declaratory judgment holding that the Town and Officer Jackson in his official capacity violated Mr. Lynch's rights under the laws of the United States;

C.      Assess reasonable attorney's fees and costs in suit in favor of Mr. Lynch and against the Town and Officer Jackson in his official capacity, jointly and severally; and

D.      Grant Mr. Lynch any such other and further relief as the nature of his cause may warrant.

## COUNT III
## FALSE IMPRISONMENT AND FALSE ARREST
### (Officer Jackson in his Personal Capacity)

51.     The facts alleged above are incorporated herein by reference.

52.     Officer Jackson, by falsely reporting Mr. Lynch had pointed a firearm at him, deprived Mr. Lynch of his liberty without consent and without legal justification.

53.     Officer Jackson's conduct was undertaken deliberately and with actual or implied malice.

54.     Officer Jackson's actions were flagrant, willful, wanton, and reckless, and displayed a high degree of moral culpability.

**WHEREFORE**, Mr. Lynch respectfully requests this Honorable Court grant the following relief:

A.      Enter a judgment in favor of Mr. Lynch and against Officer Jackson for compensatory damages;

B.      Grant Mr. Lynch any such other and further relief as the nature of his cause may warrant.


## COUNT IV
## MALICIOUS PROSECUTION
**(Officer Jackson and Detective Moerschel in their Personal Capacities)**

55.      The facts alleged above are incorporated herein by reference.

56.      Officer Jackson, by falsely reporting Mr. Lynch had pointed a firearm at him, caused Mr. Lynch to be arrested by the OCPD.

57.      Relying on Officer Jackson's false report, Detective Moerschel instigated criminal proceedings against Mr. Lynch by filing charges against him.

58.      Given the obvious factual and logical gaps in Officer Jackson's account which were readily apparent to many of the officers involved in Mr. Lynch's arrest, the proceedings against Mr. Lynch lacked probable cause.

59.      Officer Jackson and Detective Moerschel acted with malice and could not have been motivated by justice.

60.      The proceedings against Mr. Lynch were terminated in his favor.

**WHEREFORE**, Mr. Lynch respectfully requests this Honorable Court grant the following relief:

A.      Enter a judgment in favor of Mr. Lynch and against Officer Jackson and Detective Moerschel, jointly and severally, for compensatory damages;

B.    Assess reasonable attorney's fees and costs in suit in favor of Mr. Lynch and against Officer Jackson and Detective Moerschel, jointly and severally;

C.    Grant Mr. Lynch any such other and further relief as the nature of his cause may warrant.

Respectfully Submitted,

ROBIN R. COCKEY, Federal Bar No.02657
ASHLEY A. BOSCHÉ, Federal Bar No. 28800
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax:  410-546-1811
rrcesq@cbmlawfirm.com
abosche@cbmlawfirm.com
*Attorneys for Plaintiff*