IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| TIMOTHY LYNCH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Case No.: SAG-24-00874 |
| v. | * | |
| | * | |
| THE MAYOR AND CITY COUNCIL | * | |
| OF OCEAN CITY, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

# MEMORANDUM OPINION

This lawsuit arises from an interaction between Plaintiff Timothy Lynch ("Plaintiff") and officers from the Ocean City Police Department. Plaintiff has sued the Mayor and City Council of Ocean City, Maryland ("the Town"), Officer Dana Jackson ("Officer Jackson") and Detective Kory Moerschel ("Detective Moerschel," and collectively "Defendants"). *See* ECF 1. Discovery has now concluded and Defendants have filed a motion for summary judgment, ECF 24. Plaintiff opposed the motion, ECF 27, and Defendants replied, ECF 30. This Court has reviewed all of the filings and has determined that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated herein, Defendants' motion will be granted in part and denied in part.

## I.   FACTUAL BACKGROUND

In evaluating a motion for summary judgment, this Court considers the facts in the light most favorable to Plaintiff as the non-moving party. Plaintiff is a retired police officer with the Philadelphia Police Department who served as a trainer on the SWAT team and has worked as a firearms instructor. ECF 27-3 at 8, 11, 14–15. The Law Enforcement Officer Safety Act

("LEOSA") permits Plaintiff to own and carry firearms because he retired from a police department in good standing. *Id.* at 17–18.

On December 1, 2022, at around 4:45 pm, Plaintiff stopped his car at a red light at an intersection in Ocean City, Maryland. *Id.* at 50–51. While he waited for the light to turn green, Plaintiff removed his Glock handgun from its holster because he was experiencing some discomfort from wearing it all day. *Id.* at 57–58. At first, he placed the gun on the front passenger seat of his car, but a few seconds later, he picked it up with his right hand, transferred it to his left, and pointed it towards the floor mat on the driver's side of the vehicle to practice obtaining a "sight picture" with his left eye. *Id.* at 61–62, 69–70. He then placed the gun back in his right hand and returned it to the passenger seat. *Id.* at 71. At all times, the handgun remained below the level of the car window and steering wheel. *Id.* at 64–65.

After Plaintiff returned the gun to the passenger seat, another vehicle pulled up next to his car on the passenger side. *Id.* at 71–72. Plaintiff tried to pin the handgun against his thigh to conceal it but noticed that the driver of the car began to scream at him. *Id.* at 73. Plaintiff made brief eye contact with the driver and then turned away to ignore him. *Id.* at 73–74. The light turned green, Plaintiff returned the handgun to his holster, and made a left-hand turn onto Route 50. *Id.* at 75. The other car sped ahead and Plaintiff never saw the car or driver again. *Id.* 76–77. Plaintiff drove to his home near 32nd Street in Ocean City, arriving around 5:55 pm. *Id.* at 77–80.

Although Plaintiff did not know the other driver, it was an off-duty Ocean City Police Department officer, Officer Dana Jackson, who was driving his personal vehicle to work. ECF 27-4 at 8. After driving away, Officer Jackson called 911 and reported that Plaintiff had pointed a handgun at him through his passenger-side window, then turned to point the firearm out his front windshield. *Id.* at 8–9. Officer Jackson also reported that he had tailed Plaintiff's vehicle after the

2

encounter, only ending pursuit when he reached the OCPD headquarters on 65th Street. ECF 27-6. Officer Jackson provided a description of Plaintiff, his car, and the firearm, which, according to Plaintiff, included some inaccuracies. ECF 27-11 at 13 n.8.

After the call from Officer Jackson, OCPD issued an all-points bulletin for Plaintiff and his vehicle. ECF 27-6. Other officers pulled his car over near his home and arrested Plaintiff at gunpoint. ECF 27-7 at 33–36. Multiple firearms were pointed at Plaintiff as he exited his vehicle. ECF 27-6. Among others, OCPD Captain Shawn Jones was present at the arrest. ECF 27-7 at 37; ECF 27-6. Detective Moerschel observed that Plaintiff carried a LEOSA card as a retired officer. ECF 27-7 at 44. Detective Moerschel interviewed Plaintiff and during the interview he detailed what he had done with the firearm inside his car and denied he had ever pointed it at Officer Jackson. ECF 27-6.

After the interview, Detective Moerschel charged Plaintiff with two felony offenses: first- and second-degree assault, and reckless endangerment. ECF 27-8. A few days later, Plaintiff met with Captain Jones, who had spoken to Plaintiff's direct supervisor at the Philadelphia Police Department and received a stellar report. ECF 27-3 at 118–20. Plaintiff told Captain Jones the same version of events that he had told Detective Moerschel at the scene of the arrest. *Id.* at 119. Following that meeting at some point, Captain Jones called Plaintiff and told him that the charges against him had been *nolle prossed. Id.* 126.

This lawsuit ensued, in which Plaintiff claims damages as a result of the incident.

## II.     LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of

3

showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment is warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. DISCUSSION

This case presents a quintessential dispute of fact: Plaintiff and Officer Jackson tell two different versions of the events that occurred at the traffic light. The question, then, is whether accepting Plaintiff's version of events as true, as this Court must at the summary judgment phase, summary judgment is warranted. For the reasons described below, this Court finds that summary judgment for Defendants is appropriate as to Plaintiff's 1983 claim (Count One) and his *Monell* claim (Count Two). Plaintiff's two state law claims, for false imprisonment (Count Three) and malicious prosecution (Count Four), present genuine disputes of material fact and should proceed to trial.

#### A. Section 1983 Claim

Count One asserts a claim pursuant to 42 U.S.C. § 1983 for Officer Jackson's alleged violation of Plaintiff's constitutional rights. That statute "creates a federal cause of action against those acting under color of state law," who deprive someone of rights arising under the U.S. Constitution or laws of the United States. *See Street v. Surdyka*, 492 F.2d 368, 371 (4th Cir. 1974) (citing 42 U.S.C. § 1983). A person acts under color of state law when exercising "power[] possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). "Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983." *Revene v. Charles County Commissioners*, 882 F.2d 870, 872 (4th Cir. 1989) (cleaned up). An off-duty officer, however, can sometimes act under color of state law. As the Fourth Circuit has explained, "The nature of the act performed is controlling.... The act therefore must be carefully scrutinized to determine whether an officer, whether on or off duty, is acting under color of state law." *Id.* at 872. "[M]erely private conduct, no matter how discriminatory or wrongful," does not meet the "color

of state law" requirement. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). The determination whether state action is present is "a matter of normative judgment" based on assessment of "the totality of the circumstances." *Davidson v. Randall*, 912 F.3d 666, 679–80 (4th Cir. 2019). A primary factor is whether "the conduct is such that the actor could not have done it without their official authority." *Id.* at 680 (citation omitted). Cases in which off-duty officers are found to act under color of state law generally involve a direct link between the alleged conduct and the officers' official role. *See, e.g.*, *Rossignol*, 316 F.3d 516 (finding that off duty sheriff's deputies acted under color of state law when they purchased and seized all the copies of a local newspaper on Election Day in attempt to conceal articles about the sheriff and his friend).

The parties dispute whether Officer Jackson was acting under color of law at the time of this incident. The record shows that he was not on duty, in his private vehicle, and on his way to work when his interaction with Plaintiff occurred. Officer Jackson called 911 and reported the incident just as any private citizen would do. He later provided a written statement and interview to the investigators while he was on duty, but he was not involved in any way with Plaintiff's arrest, questioning, or follow-up investigation. He acted no differently, then, than any private citizen who believed he had observed similar conduct from another driver on a public roadway.

Plaintiff argues that Officer Jackson "leveraged his status as a police officer to instigate [Plaintiff's] arrest and subsequent charging, and, indeed (falsely) claimed to have tailed [Plaintiff] all the way to OCPD headquarters on 65th Street." ECF 27-11 at 8. Plaintiff's theory is that despite Officer Jackson's "implausible" story, his colleagues and Captain Jones credited it primarily because he was a police officer in their agency. *Id.* at 9. That may be true, but the decisions made by the other officers involved cannot be viewed as Officer Jackson "leveraging his status" or his

official authority. There is no evidence that Officer Jackson used his status to threaten or even persuade the other officers to believe his version of events over Plaintiff's. Instead, Officer Jackson reported his version of events just like any other victim of an offense. The investigating officers took statements from all involved, completed their investigation, and brought charges based on the facts as they assessed them to be. The lack of evidence that Officer Jackson "acted under color of state law" in reporting the conduct he witnessed requires summary judgment to be granted on Count One.[1]

### B. *Monell* Claim

Count Two is a *Monell* claim asserted against Officer Jackson and Detective Moerschel in their official capacities against the Town. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978), allows local governments and their officials to be liable for federal constitutional deprivations where the violations are brought about by "those whose edicts or acts may fairly be said to represent official policy." *Id.* As this Court has already concluded that Officer Jackson acted in a personal and not a law enforcement capacity when reporting this incident as a victim/witness, no *Monell* claim can lie for his actions.

As to Detective Moerschel, the contours of Plaintiff's *Monell* claim are unclear, even now that the case is at the summary judgment stage. Plaintiff seems to assert, without citing any evidence, that Detective Moerschel or some other participant at the scene was a "person with final policymaking authority."[2] ECF 27-11 at 14. He does not cite any evidence showing that any other "final policymaker" contributed to Det Moerschel's charging or arrest decisions or that Det.

---

[1] This Court therefore need not reach Officer Jackson's claim of qualified immunity.

[2] To the extent that Plaintiff's *Monell* claim is premised on some other person's policymaking authority, it is still subject to summary judgment because it only asserts a claim against Officer Jackson and Detective Moerschel in their official capacities, not anyone else.

Moerschel himself is a final policymaker. And Plaintiff clearly does not identify any Ocean City policy contributing to Plaintiff's arrest or charges. Summary judgment for Defendants is also appropriate as to Count Two.

### C. False Imprisonment

Count III alleges false imprisonment against Officer Jackson in his personal capacity. The elements of that claim in Maryland are: (1) the deprivation of the liberty of another (2) "without consent" and (3) "without legal justification." *Green v. Brooks*, 725 A.2d 596, 605 (Md. Ct. Spec. App. 1999). A cognizable deprivation of liberty requires "some direct restraint of the person," which can be achieved by force, the threat of force, the assertion of legal authority, or other action. *Scott v. Old Navy, LLC*, No. 20-1253, 2022 WL 2764415, at *5 (4th Cir. July 15, 2022) (quoting *Mason v. Wrightson*, 109 A.2d 128, 131 (Md. 1954)). However, where the person who instigated the wrongful arrest acts as a private party, the plaintiff must prove that the defendant "knowingly g[a]ve[] false information" to the police. *Montgomery Ward v. Wilson*, 664 A.2d 916, 926 (Md. 1995).

Although his statements have changed some over time, Plaintiff's testimony provides enough evidence to generate a triable issue on whether Officer Jackson knowingly gave false information to the police when he alleged that Plaintiff pointed the firearm at him in the car. As noted above, the parties' description of the events diverges dramatically, and the factfinder will have to decide whether it believes one party over another or finds the truth to lie somewhere in-between. But the resolution of that issue, which is the subject of a fact dispute involving witness credibility, is not appropriate for summary judgment.

### D. Malicious Prosecution

Count VI alleges malicious prosecution. Under Maryland law, to establish malicious prosecution, a plaintiff must prove "(1) that a criminal proceeding was instituted or continued by the defendant against the plaintiff, (2) that the proceeding terminated in favor of the plaintiff, (3) the absence of probable cause for the proceeding, and (4) malice, meaning that a primary purpose in instituting the proceeding was other than that of bringing the plaintiff to justice." *DiPino v. Davis*, 729 A.2d 354, 373 (Md. 1999). A private party can initiate a prosecution for the purposes of a malicious prosecution claim if it takes some affirmative act to "institute[ ], instigate[ ] or inspire[ ] in any fashion" the state to bring criminal charges. *Smithfield Packing Co., Inc. v. Evely*, 905 A.2d 845, 854 (Md. Ct. Spec. App. 2006) (quoting *Wood v. Palmer Ford, Inc.*, 425 A.2d 671, 677 (Md. Ct. Spec. App. 1981)). The absence of probable cause may be inferred from the termination of the proceeding in favor of the plaintiff, including by *nolle prosequi. See Shipp v. Autoville Ltd.*, 328 A.2d 349, 360-61 (Md. Spec. App. 1974); *Norvell v. Safeway Stores, Inc.*, 212 Md. 14, 22 (1957). For a *nolle pros* to evidence a lack of probable cause, the dismissal "must be at the insistence of the private prosecutor or conditioned upon his consent." *Exxon Corp. v. Kelly*, 381 A.2d 1146, 1150 (Md. 1978) (citing Restatement (Second) of Torts § 665(2) (1977)).

Defendants note that Plaintiff offers no evidence of malice, and in fact provided testimony suggesting he knew of no reason Officer Jackson or Detective Moerschel would have acted maliciously. Plaintiff counters that where there is a lack of probable cause to arrest, malice may be inferred, subject to rebuttal by the Defendants. *Shipp*, 328 A.2d at 362. Ultimately, this Court agrees with Plaintiff that matters of knowledge, intent, motive, and credibility are typically left to the jury, rendering summary judgment inappropriate on this claim. *See Hines v. French*, 852 A.2d 1047, 1059 (Md. Spec. App. 2004).

### E. Supplemental Jurisdiction Over Remaining State Law Claims

The remaining counts in this case are state law claims. Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction" over state claims if, *inter alia*, the court "has dismissed all claims over which it has original jurisdiction," or, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." *Id.* The Supreme Court has explained that district judges should "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

In this case, the values of judicial economy and convenience weight in favor of keeping the case in federal court, given that discovery has been concluded and the case is ready for trial. This Court is now familiar with the issues to be presented as a result of this summary judgment ruling and there are no novel issues of state law that might mitigate in favor of disposition of the case in state court. Accordingly, this Court will retain supplemental jurisdiction over the state law claims and set this case for trial.

### IV. CONCLUSION

For the reasons stated above, Defendants' Motion, ECF 24, will be granted as to Counts One and Two and denied as to Counts Three and Four. A separate Order follows, granting judgment in favor of the Town on the claim against it. Chambers will contact the parties to schedule a conference call to select a trial date.

Dated: August 11, 2025            /s/
                                  Stephanie A. Gallagher
                                  United States District Judge